(928 P.2d 915)

No. 74,328

Dr. Galen D. Bird and Linda Bird, Natural Parents and Heirs at Law of Judy K. Bird, Deceased, *Appellants,* v. Kansas Department of Transportation and Dean Carlson, Secretary of Transportation, *Appellees.*

Opinion filed December 13, 1996.

*Gregory A. Dean,* of Overland Park, for appellants.

*Vicky S. Johnson,* staff attorney, and *Michael B. Rees,* chief counsel, of Kansas Department of Transportation, for appellees.

Before Royse, P.J., Rogg, S.J., and Edward Bouker, District Judge, assigned.

Royse, J.: This is a wrongful death action arising out of the death of Judy K. Bird in a one-vehicle accident. Dr. Galen D. Bird and Linda Bird, parents of the decedent, appeal the order of the district court dismissing their action as barred by both the statute of limitations and the Kansas Tort Claims Act.

The first issue on appeal is whether the Birds obtained timely service of process on the Secretary of Transportation. Resolution of this issue requires interpretation of statutes regarding service of process and commencement of an action. Interpretation of a statute is a question of law, subject to unlimited review by an appellate court. *Foulk v. Colonial Terrace,* 20 Kan. App. 2d 277, Syl. ¶ 1, 887 P.2d 140 (1994), *rev. denied* 257 Kan. 1091 (1995).

The accident giving rise to this litigation occurred on December 19, 1992. The Birds filed suit on January 27, 1994, naming Kansas

Department of Transportation (KDOT) as the sole defendant. KDOT filed an answer, asserting a number of defenses including insufficient service of process and lack of personal jurisdiction. The parties proceeded with discovery and took the depositions of expert witnesses.

In November 1994, KDOT filed a motion for summary judgment. In the motion, KDOT contended it was immune under the Kansas Tort Claims Act. KDOT further argued plaintiffs had failed to obtain jurisdiction over the State of Kansas because they had not named as a defendant and obtained service on the Secretary of Transportation (Secretary). KDOT pointed out that the department lacks the power to sue or be sued.

The Birds filed a motion to add the Secretary as a defendant, and KDOT did not object. An amended petition naming Michael L. Johnson, Secretary of Transportation, as a defendant was filed on December 16, 1994. Service on the Secretary, by delivery to the attorney general, was obtained on January 6, 1995, January 27, 1995, and March 10, 1995. Although it is not pertinent to this appeal, we note that at some point in this sequence, Michael L. Johnson was succeeded by Dean Carlson, and plaintiffs substituted Carlson for Johnson.

In summary, the dates pertinent to the statute of limitations issue are as follows:

| | |
|---|---|
| December 19, 1992 | Date of accident |
| December 16, 1994 | Amended petition filed, naming Secretary of Transportation as a defendant. |
| January 6, 1995 | Service by delivery to attorney general. |

For purposes of this appeal, we need not address the question whether KDOT is correct in its claim that it lacks the capacity to sue or be sued. But see *Johnson v. Board of Pratt County Comm'rs [and KDOT]*, 259 Kan. 305, 913 P.2d 119 (1996); *Ball v. Burns & McDonnell [and KDOT]*, 256 Kan. 152, 883 P.2d 756 (1994); *Rollins v. Kansas Dept. of Transportation*, 238 Kan. 453, 711 P.2d 1330 (1985); and *Kemna v. Kansas Dept. of Transportation*, 19 Kan. App. 2d 846, 877 P.2d 462 (1994). Certainly, the Secretary, as successor to the powers of the old Kansas Highway Commission,

can sue or be sued. Pursuant to K.S.A. 75-5004, all powers of the Kansas Highway Commission were transferred to the Secretary of Transportation. Those powers included the power to sue or be sued. K.S.A. 74-2001 (repealed L. 1975, ch. 426, § 65); *Hopkins v. State*, 237 Kan. 601, 606, 702 P.2d 311 (1985).

The first question we must address is whether service delivered to the attorney general is effective service on the Secretary. The Birds argue K.S.A. 60-304(d) is the applicable statute. The Secretary argues he is an individual and may only be served in accord with K.S.A. 60-304(a).

K.S.A. 60-304 provides that service shall be made as follows:

"(a) *Individual*. Upon an individual other than a minor or disabled person, by serving the individual or by serving an agent authorized by appointment or by law to receive service of process . . . . Service by certified mail shall be addressed to an individual at the individual's dwelling house or usual place of abode and to an authorized agent at the agent's usual or designated address. . . .

. . . .

"(d) *Governmental bodies*. . . . (5) upon the state or any governmental agency of the state, when subject to suit, by serving the attorney general or an assistant attorney general. Service by certified mail shall be addressed to the appropriate official at the official's governmental office."

The term "governmental agency" is not defined in 60-304. It does, however, have a well-established meaning: "A subordinate creature of the sovereign created to carry out a governmental function." Black's Law Dictionary, 825 (rev. 4th ed. 1968). Kansas appellate courts have concluded the term is so broad as to include both counties and municipalities. *Carroll v. Kittle*, 203 Kan. 841, 847, 457 P.2d 21 (1969); *City of Olathe v. Board of Zoning Appeals*, 10 Kan. App. 2d 218, 220, 696 P.2d 409 (1985).

That the term "governmental agency" is broad enough to include an individual carrying out governmental functions is demonstrated in *City of Hutchinson v. Hutchinson, Office of State Employment Service*, 213 Kan. 399, 517 P.2d 117 (1973). In that case, the City of Hutchinson brought suit to obtain documents from the local office of the State Employment Service. The district court dismissed the action and the Supreme Court affirmed, determining that the State Labor Commissioner was a necessary party to the

suit. The Supreme Court emphasized that the State Labor Commissioner could be served under K.S.A. 1972 Supp. 60-304(d). 213 Kan. at 404. The court concluded: "Failure to name the State Labor Commissioner as a party defendant and serve the attorney general or an assistant attorney general is fatal to the appellant's action." 213 Kan. at 406.

The legislature's intent to include individual state officials within the scope of 60-304(d) is further shown by the fact that service by certified mail must be sent to the "official's governmental office." This language is broad enough to include an individual such as the Secretary. Moreover, this provision is useful in construing the entire subsection, because certified mail is now the preferred method of service. K.S.A. 60-303; Casad, *Service of Process by Certified Mail*, 59 J.K.B.A. 25 (Nov./Dec. 1990).

For all the foregoing reasons, we conclude that service delivered to the attorney general pursuant to 60-304(d) is effective service on the Secretary of Transportation.

The second question we must address is whether the relation back provision of K.S.A. 60-203(a) applies to an amended petition. The Secretary argues 60-203(a) only applies to an original petition, and thus the Birds failed to commence this action before the statute of limitations ran. We disagree.

K.S.A. 60-203(a) provides that a civil action is commenced at the time of filing the petition if service of process is obtained within 90 days after the filing of the petition. K.S.A. 60-203(a) does not distinguish between original and amended petitions, nor does K.S.A. 60-207(a), which lists the pleadings allowed in Chapter 60 actions. See *King v. Pimentel*, 20 Kan. App. 2d 579, 585, 890 P.2d 1217 (1995) (answer is appropriate response to a petition, including an amended petition). In addition, the Secretary has failed to provide any justification for treating an amended petition filed on December 16, 1994, any differently than we would treat an original petition filed on the same date. Certainly, the Secretary was not prejudiced by the fact that the Birds filed a petition and then an amended petition, as opposed to simply filing a petition, in this action.

The relation back provision of 60-203(a) was applied to an amended petition in *Fennesy v. LBI Mgt., Inc.*, 18 Kan. App. 2d 61, 847 P.2d 1350 (1993). *Fennesy* was an action for personal injuries arising out of an attack that occurred on October 11, 1988. Fennesy filed her original petition on June 12, 1990. She filed an amended petition on October 9, 1990, adding Parker-Hannifin Corporation as an additional defendant.

"On October 22, 1990, Parker-Hannifin was served with the first amended petition. The two-year statute of limitations had run on October 11, 1990. Pursuant to 60-203(a), the petition filed against Parker-Hannifin was timely because service was obtained within 90 days of filing the petition." 18 Kan. App. 2d at 63.

For these reasons, we. conclude the relation back provision of 60-203(a) applies to an amended petition. The Birds obtained service on the attorney general within 90 days after filing the amended petition, so the commencement date of this action against the Secretary related back to the filing of the amended petition on December 16, 1994. Thus, the Birds timely and properly commenced this action.

The district court erred in dismissing this action as barred by the statute of limitations. In light of this conclusion, we need not address the parties' arguments regarding the application of the savings provision under K.S.A. 60-203(b).

The second issue on appeal is whether the district court erred in granting summary judgment to the defendants under the Kansas Tort Claims Act. Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The nonmoving party bears the burden to come forward with evidence to establish a dispute as to a material fact. *Mitzner v. State Dept. of SRS*, 257 Kan. 258, 260, 891 P.2d 435 (1995).

"When the issue on appeal is whether the trial court correctly granted a summary judgment, an appellate court should read the record in the light most favorable to the party against whom summary judgment was entered. . . . Factual inferences tending to show triable issues must be considered in the light most favorable to the existence of those issues. . . . Moreover, pleadings and docu-

mentary evidence must be given a liberal construction in favor of the party against whom the motion is directed. [Citation omitted.]" *Seabourn v. Coronado Area Council, B.S.A.*, 257 Kan. 178, 189, 891 P.2d 385 (1995).

In this case, the district court determined the Birds failed to present any evidence to controvert the Secretary's contention that no prevailing engineering standards existed for designing and installing guardrails along highways as of 1972, when the guardrail involved in this accident was installed. The district court held that, absent such standards, the design and installation of guardrails was a discretionary function so that the Secretary was immune from liability under K.S.A. 1995 Supp. 75-6104(e).

In determining that the Birds had failed to present evidence showing an issue of a material fact, the district court disregarded affidavits submitted by the Birds in opposition to the motion for summary judgment. The district court considered the Birds' affidavits improper because they "controvert, contradict, add to, and attempt to further explain" the deposition testimony of the expert witnesses.

"An affidavit cannot be used to controvert a prior sworn statement in order to create an issue of material fact and defeat a motion for summary judgment." *Bacon v. Mercy Hosp. of Ft. Scott*, 243 Kan. 303, 314, 756 P.2d 416 (1988); *Mays v. Ciba-Geigy Corp.*, 233 Kan. 38, 45, 661 P.2d 348 (1983).

In this case a comparison of the expert witness depositions with the Birds' affidavits does not show such contradictions or inconsistencies as would warrant disregarding the affidavits. The Birds attached to their response to the motion for summary judgment portions of a deposition from an expert who testified that, under 1972 design standards, guardrails needed to be at a uniform height of 27 inches above the ground. The end of this guardrail was substantially above that height so that in an accident the end of the guardrail could easily penetrate the passenger compartment of a car. The standards in 1972 also called for an end treatment on a guardrail, which was not present here.

The Birds also attached to their response to the motion for summary judgment portions of the deposition of another expert witness who testified that standards adopted by various agencies called for

guardrails to be between 24 and 30 inches off the ground and that the guardrail in question exceeded all those standards. He further testified that by the mid-1960's, the Federal Highway Commission required guardrails to be 30 feet from the roadway, so that a guardrail would be flared back 20 feet from a 10-foot shoulder. The guardrail here, however, was only 8 feet from the shoulder.

The Birds further offered the testimony of a KDOT official that department policy was to install rumble strips on the shoulder of a highway during any resurfacing deep enough to accommodate such grooves in the pavement. Rumble strips produce a warning hum to alert drivers when they have left the driving lanes of the highway. The section of highway where this accident occurred did not have such rumble strips.

The affidavits from the two experts submitted by the Birds included statements that the guardrail design did not meet any prevailing standards or practices as of the date of the design or any subsequent date.

Based on our review of the record we must conclude that the affidavits are not so inconsistent with the deposition testimony of the expert witnesses as to justify disregarding the affidavits. Perhaps even more importantly, the deposition testimony of the experts submitted by the Birds was sufficient to controvert the Secretary's contention that no standards for the design and installation of guardrails existed in 1972. The expert witnesses testified that standards did exist for the height and placement of guardrails in 1972. The KDOT official testified that department policy called for the installation of rumble strips when resurfacing was deep enough for such grooves in the pavement.

The Birds satisfied their burden to come forward with evidence to establish the existence of disputed material facts. The district court erred in granting summary judgment to the Secretary.

The Birds' final argument is that, by contending there are no standards for guardrail design and installation, the Secretary has precluded the application of governmental immunity. The Birds maintain the Secretary must show the existence and compliance with standards in order to claim immunity. We disagree.

K.S.A. 75-6103(a) provides that a state governmental entity shall be liable for damages caused by the negligent acts or omissions of any of its employees acting within the scope of their employment. K.S.A. 1995 Supp. 75-6104(e), however, provides an exception to liability if the act or omission was a discretionary function of the governmental entity or its employee. The discretionary function exception may come into play when there are no standards applicable to the governmental action. See *Collins v. Board of Douglas County Comm'rs*, 249 Kan. 712, 721, 822 P.2d 1042 (1991); *Dougan v. Rossville Drainage Dist.*, 243 Kan. 315, 323, 757 P.2d 272 (1988); and *Toumberlin v. Haas*, 236 Kan. 138, 142, 689 P.2d 808 (1984).

The decision of the district court dismissing this action is reversed, and the case is remanded for further proceedings.

Reversed and remanded.