NOT DESIGNATED FOR PUBLICATION

No. 127,446

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

DONNA HUFFMAN and CRAIG REINMUTH,
*Appellants*,

v.

LARRY BUESSING, METROPOLITAN LIFE INSURANCE COMPANY, MASSMUTUAL
FINANCIAL GROUP, and G4S COMPLIANCE AND INVESTIGATIONS,
*Appellees*.

MEMORANDUM OPINION

Appeal from Atchison District Court; JOHN J. BRYANT, judge. Submitted without oral argument.
Opinion filed November 21, 2025. Affirmed in part and dismissed in part.

*Craig Reinmuth*, appellant pro se.

*Scott Nehrbass*, of Foulston Siefkin LLP, of Overland Park, and *Andrew C. Whitaker*, pro hac
vice, of Figari & Davenport, LLP, of Dallas, Texas, for appellee Metropolitan Life Insurance Company.

Before WARNER, C.J., ATCHESON and ISHERWOOD, JJ.

PER CURIAM: Donna Huffman and Craig Reinmuth (collectively Plaintiffs) filed
suit against several defendants, alleging that they suffered damages based on
representations and actions involving an insurance policy. Reinmuth—who is not a
lawyer and represents himself—now appeals the district court's dismissal of Reinmuth's
claims against Metropolitan Life Insurance Company (MetLife) without prejudice.
Reinmuth also appeals the district court's sanctions against him. Because Reinmuth's
sanctions motion was frivolous and MetLife's sanctions motion was meritorious, we
affirm the district court's decisions on attorney fees. Because we lack jurisdiction to

1

review claims dismissed without prejudice, we dismiss the remainder of Reinmuth's claims on appeal.

FACTUAL AND PROCEDURAL BACKGROUND

In May 2021, Plaintiffs sued MetLife and three other defendants: (1) Larry Buessing, the agent who assisted Huffman in applying for the insurance policy; (2) MassMutual Financial Group, the trade name for Buessing's employer; and (3) G4S Compliance and Investigations, a third-party vendor that interviewed Huffman at MetLife's request in September 2019. Huffman sought to recover hundreds of thousands of dollars in disability benefits under a MetLife insurance policy, plus additional damages. The initial petition was largely Huffman's, with Reinmuth making no claims against MetLife. His only claim appeared under "Count 4 Violations of the Kansas Consumer Protection Act," reciting that "Craig Reinmuth is a consumer as a husband of Donna Huffman who sought the services of Larry Buessing, Donna's agent and advisor as well as G4S [Compliance and Investigations] for personal and household benefit." Buessing, MassMutual Financial Group, and G4S Compliance and Investigations were dismissed as parties below, leaving only MetLife as a party to this appeal.

On May 27, 2022, our Supreme Court suspended Huffman from the practice of law for two years. *In re Huffman*, 315 Kan. 641, 509 P.3d 1253 (2022). Accordingly, the district court removed Huffman as counsel for Plaintiffs and required them to address whether they intended to retain counsel or proceed pro se. The parties had a hearing scheduled for late June 2022, and the district court assigned that hearing date as the deadline for Plaintiffs to determine how they would proceed with respect to representation.

On June 20, 2022, Huffman filed an amended petition pro se, with a footnote acknowledging that her license to practice law was suspended. Although Huffman was

2

allegedly only representing only herself in this matter, her amended petition included complaints on behalf of Reinmuth. That is, it contained several references to Plaintiffs collectively or Reinmuth individually. Reinmuth did not sign the amended petition.

Huffman also filed a notice, formally responding to the district court's inquiry about her representation and advised that she would represent herself. Reinmuth did not file a similar notice. At the June hearing, Reinmuth requested and was granted 60 to 90 days to hire counsel.

MetLife responded to Huffman's amended petition and highlighted the fact that Reinmuth did not sign the petition himself as a pro se litigant, nor did he have counsel of record. Thus, when Huffman alleged complaints on Reinmuth's behalf she did so without a valid law license and thereby engaged in the unauthorized practice of law. Counsel for MetLife sent a courtesy email to remind Huffman that K.S.A. 60-211(a) requires petitions to be signed and he would move to strike the portions of the petition relevant to Reinmuth if Reinmuth did not sign it by August 9, 2022. Reinmuth responded to MetLife's counsel by email on August 9, 2022, to state: "It appears that you are attempting to give me legal counsel, as opposing counsel in this case. I have not checked the ethics rules but this would appear to be a serious violation."

At an evidentiary hearing on August 29, 2022, Reinmuth appeared without counsel. When the district court inquired whether he intended to retain counsel, Reinmuth did not directly answer the question posed and instead simply outlined the efforts he had undertaken to hire an attorney. The district court opted to proceed with the hearing.

The following month, Reinmuth moved to sanction Metlife's counsel for his earlier email reminding Reinmuth that petitions must be signed. Reinmuth alleged that opposing counsel violated various ABA Model Rules and the Kansas Rules of Professional Conduct, then asked the district court to report opposing counsel to the Kansas

Disciplinary Administrator and impose financial sanctions. MetLife responded that Reinmuth's motion for sanctions was meritless and requested to be awarded the $1,486 in attorney fees and costs that it expended in responding to Reinmuth's motion.

The district court declined to find that any ethical violations were committed, concluded that Reinmuth's motion was frivolous, and ordered Reinmuth to pay the attorney fees that MetLife incurred in responding to the motion. The district court also noted that the deadline it gave Reinmuth to hire an attorney had passed.

> "In addition, since it appears Mr. Reinmuth is proceeding pro se he should be prepared to address all other motions outstanding at the status hearing on October 6.
> "Plaintiff Reinmuth has until October 1, 2022 to file any additional pleading in this case, including why his case should not be dismissed for lack of standing."

Reinmuth challenged MetLife's fee application but did not dispute the district court's finding that his motion for sanctions was frivolous.

The district court conducted a status hearing in late October 2022, at which time Reinmuth advised that he would file his own amended petition, was still seeking to hire counsel, and hoped to have counsel soon. The district court added a note to its case status update about Reinmuth's representation: "The court does not address any other issues regarding Mr. Reinmuth because he has indicated he still wishes to be represented by counsel. Mr. Reinmuth is advised that if counsel is not obtained soon that he will have the option of self-representation, voluntary dismissal or dismissal without prejudice."

Reinmuth filed a case status update the following month and asserted: "I am a party to the case and have a right to be in the case because I am Donna Huffman's husband and paid some of the premiums for the policy and this affects our household

income. I expect the benefit of the policy." That same day, Reinmuth dismissed his claims against Buessing.

In March 2023, the district court dismissed Reinmuth's claims and explained its reasoning as follows:

> "Plaintiff Reinmuth's case is dismissed over his objection without prejudice. He has failed to meet any court deadlines, participate in any meaningful way in the prosecution of this matter and has stated that he does not wish to represent himself and yet he has not obtained counsel in the eight months since Plaintiff Huffman's suspension of her law license. There has been no showing by Plaintiff Reinmuth of any attempts to move this case forward and the court does not see any remedy short of dismissal which would do so."

Reinmuth moved to alter or amend the dismissal order. He also moved for a change of judge under K.S.A. 20-311d. The district court denied Reinmuth's motion to alter or amend then addressed the issue of Reinmuth's representation:

> "To clarify[,] this court has never required Mr. Reinmuth to have counsel. Mr. Reinmuth stated he was not comfortable proceeding [pro se] and that he desired to have counsel. In addition, at one point both Plaintiffs claimed they were in the process of hiring counsel. The court afforded ample oppo[rt]unity for Mr. Reinmuth to obtain counsel as he requested. The court set a deadline for Mr. Reinmuth to appear with counsel or that he should be prepared to argue his case [pro se] including why his case should not be dismissed. Mr. Reinmuth at the following status conference indicated he did not believe he was required to be at the subsequent hearing and followed up after that deadline with a written response as to why he should not or could not be dismissed [fr]om the action. Therefore, this case which has not progressed in the nearly two years since it had been filed, was at a stalemate. Mr. Reinmuth was unwilling to proceed without counsel but unable to obtain counsel. The court believes that there is no other action which can be taken given the posture that Mr. Reinmuth put his case in. Therefore, the court will not alter or amend the order dismissing him from the case without prejudice."

That same day, Huffman also moved for a change of judge under K.S.A. 20-311d alongside a "Notice That This Court Exceeds Bounds in Continuing to Rule While Change of Judge is Pending." She argued that the requests for a change of judge should have stayed any further rulings from the district court in the case. The next day, the district court issued a journal entry outlining the timing of events. It emphasized that it entered orders on Reinmuth's pleadings before the change of judge motions were ever filed. It noted that it was not until after Reinmuth's case was dismissed that Reinmuth moved for a change of judge. Thus, Reinmuth had no standing to request a change of judge because he no longer had a case pending before the court.

Huffman's claims remained, however, so the district court set a hearing on her motion for change of judge for April 2023. Huffman moved to reschedule the hearing, again complaining of the district court's ruling on Reinmuth's motion to alter or amend. Her motions for recusal and change of judge were denied which prompted Plaintiffs to file affidavits supporting their requests for a change of judge.

The chief judge of the Atchison District Court, Joan M. Lowdon, reviewed Plaintiffs' affidavits and denied their request for a change of judge. She reasoned, in part, that after Reinmuth was dismissed from the case, he lacked standing to request a change of judge. Chief Judge Lowdon also found, in a separate order, that Huffman's affidavit was similarly insufficient. Huffman moved for reconsideration and it was denied.

Plaintiffs attempted to appeal to this court at that point and it was dismissed upon this court's finding that the district court's dismissal of Reinmuth's case was not a final order because Huffman's claims against MetLife remained pending before the district court. This court also noted that the district court did not apply K.S.A. 2022 Supp. 60-254(b) or K.S.A. 2022 Supp. 60-2102(c) to authorize an interlocutory appeal. Our Supreme Court denied Plaintiffs' petition for review of this court's dismissal. The case

6

continued in the district court for resolution of pending motions and for a final adjudication.

MetLife had previously moved, in June 2022, to dismiss all Plaintiffs' claims due to discovery violations. MetLife argued for a dismissal with prejudice, and Huffman later moved to voluntarily dismiss her claims without prejudice. MetLife responded and again asked the district court to dismiss with prejudice. The district court granted MetLife's request and authorized the company to submit an updated request for sanctions. Huffman was ultimately ordered to pay $111,411.75 in sanctions.

Reinmuth now brings this appeal.

LEGAL ANALYSIS

I. *Did the district court err in ordering sanctions?*

Reinmuth argues that the district court erred by ordering him to pay sanctions in the amount of $1,486 for the motion he filed seeking the imposition of sanctions and the filing of a disciplinary complaint against MetLife's counsel. MetLife counters that the district court properly exercised its discretion in imposing sanctions against Reinmuth because his motion was meritless and frivolous. We agree with MetLife and affirm the district court's order.

Under K.S.A. 60-211, imposition of sanctions is discretionary, and reviewing courts will not disturb the district court's order absent an abuse of discretion. *In re Marriage of Bergmann & Sokol*, 49 Kan. App. 2d 45, 50, 305 P.3d 664 (2013). A judicial action constitutes an abuse of discretion if it (1) is arbitrary, fanciful, or unreasonable; (2) is based on a legal error; or (3) arises out of a factual error. *In re Spradling*, 315 Kan. 552, 590, 509 P.3d 483 (2022). The party asserting the district court abused its discretion

bears the burden of showing such abuse occurred. *Bicknell v. Kansas Dept. of Revenue*, 315 Kan. 451, 466, 509 P.3d 1211 (2022).

The district court articulated its findings concerning the justification for sanctions. It concluded that Reinmuth's "filing is frivolous and as such Plaintiff Reinmuth shall be responsible for Defendant Met Life's attorneys fees in preparing and filing its response." The district court maintained this minimalist approach to its rulings once MetLife submitted the amount of attorney fees.

> "The court has reviewed the application for attorney fees submitted by Defendant Met Life as well as the response by Plaintiff Reinmuth. The court is familiar with the billing system used by the attorneys in this case as it appears to be the same as is authorized for court-appointed attorneys in the state whereby they break[ ]down work based on a tenth of an hour increments. Further, this court is aware generally what attorneys charge per hour for civil as well as criminal cases. This court finds nothing unusual about the hourly rates charged by Defendant Met Life's attorneys. Finally, this court reviewed the work itemized in the application and there is nothing in that itemization that stands out to this court as being unreasonable."

On appeal, Reinmuth contends the district court failed to afford him "a reasonable opportunity to respond" to MetLife's written request for sanctions, as required under K.S.A. 2024 Supp. 60-211(c). The district court entered an order granting the request two business days after MetLife filed it and deferred the determination of an appropriate amount to be imposed as a sanction. As a technical procedural matter, Reinmuth has a point in the sense that two days did not amount to a fair response time. See Supreme Court Rule 133(b) (2025 Kan. S. Ct. R. at 210) (party allowed seven days to respond to written motion). But as MetLife notes, Reinmuth lodged no objection with the district court nor otherwise sought time to respond. And here Reinmuth offers no meritorious argument as to why the sanctions were legally improper. In short, Reinmuth has not

shown the procedural error materially prejudiced him. So he has advanced no basis for relief on appeal.

Neither the sanctions award itself nor the amount the district court ultimately imposed was arbitrary, fanciful, or unreasonable. It also was not legally infirm. Reinmuth claims that the district court committed a factual error because it did not hold an evidentiary hearing and therefore lacked sufficient information to render a sound decision. But the evidence was Reinmuth's motion itself, alongside MetLife's motion. Accordingly, all the evidence that the district court required to analyze the issue was contained within the record. We are not persuaded that any further analysis of the issue is warranted. Accordingly, the order imposing sanctions against Reinmuth is affirmed.

II. *Did the district court err by dismissing Reinmuth's claims?*

Reinmuth next contends that the district court erred in dismissing his claims because: (1) it could not force him to retain counsel, and (2) a recusal motion was pending. He adds that once his case was dismissed the district court erred in denying his motion to alter or amend, again asserting that the decision deprived him of the right to represent himself. MetLife argues that the district court correctly found that Reinmuth failed to prosecute his claims and that the recusal motion did not prevent the district court from ruling on his motion to alter or amend. Because this court lacks jurisdiction to review a dismissal without prejudice, we dismiss this portion of Reinmuth's appeal.

While the district court briefly mentioned Reinmuth's standing by pointing out that he was not listed as a beneficiary on the insurance policy, his claims were not dismissed for a lack of standing. Rather, the district court dismissed the case as a result of Reinmuth's failure to prosecute the claims.

This court has previously explained the standard of review we exercise when analyzing issues involving a dismissal for failure to prosecute:

"District courts have the authority to deny motions and, indeed, to dismiss civil actions in their entirety when the party seeking relief fails to prosecute the matter in a diligent and timely fashion. *Frost v. Hardin*, 218 Kan. 260, 263, 543 P.2d 941 (1975). The authority has been recognized as both statutory under K.S.A. 1999 Supp. 60-241(b)(1) and inherent in the district court's procedural management of its civil cases. See *Coutts v. Crider*, 219 Kan. 692, 695, 549 P.2d 1019 (1976) (inherent authority); *In re Marriage of Tubbesing*, No. 115,232, 2017 WL 383412, at *3 (Kan. App. 2017) (unpublished opinion) (statutory authority). The *Frost* court described the sound purpose behind the authority to dismiss for lack of prosecution as conferring on district courts the necessary latitude to 'control their dockets, eliminate procrastination and delay, and expedite the orderly flow of business.' 218 Kan. at 263. The district court must afford the parties fair notice that a motion may be denied or a case dismissed for inaction. Having done so, the district court then acts in its sound discretion. And appellate review is for abuse of judicial discretion. 218 Kan. at 263.

"A district court exceeds that discretion if it rules in a way no reasonable judicial officer would under the circumstances, if it ignores controlling facts or relies on unproven factual representations, or if it acts outside the legal framework appropriate to the issue. See *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106 (2013); *State v. Ward*, 292 Kan. 541, Syl. ¶ 3, 256 P.3d 801 (2011)." *In re Marriage of Huffman*, No. 116,751, 2020 WL 4378020, at *2 (Kan. App. 2020) (unpublished opinion).

But this standard only applies when decisions entered by the district court are final. We requested supplemental briefing from the parties to address whether we have jurisdiction to review claims which have been dismissed without prejudice. We have determined that we do not.

10

Our Supreme Court determined the jurisdictional boundaries for reviewing such claims in *Benchmark Property Remodeling v. Grandmothers, Inc.*, 319 Kan. 227, 553 P.3d 974 (2024). Benchmark performed work on a building owned by Grandmothers, Inc. Eventually, Benchmark was forced to file a mechanic's lien for nonpayment and later sued Grandmothers for nonpayment under the contract. After adding defendants and claims, Benchmark's second amended petition landed on eight counts against four defendants. The district court granted summary judgment on some counts, while Benchmark voluntarily dismissed other counts without prejudice. 319 Kan. at 231.

The *Benchmark Property Remodeling* court granted review of those claims which were decided on summary judgment. The court held that review of those issues was proper because the district court's resolution of those particular claims constituted a final order, even though separate claims remained that were dismissed without prejudice and could have been refiled. 319 Kan. at 232-33. The key distinction made by the *Benchmark Property Remodeling* court was that Benchmark's appeal only involved those claims decided on summary judgment; it was not seeking review of those that were dismissed without prejudice. Thus, the line of cases holding that appellate jurisdiction cannot lie from appeals from orders of dismissal without prejudice remains sound. 319 Kan. at 236 (citing *Bain v. Artzer*, 271 Kan. 578, Syl. ¶ 2, 25 P.3d 136 [2001], and *Arnold v. Hewitt*, 32 Kan. App. 2d 500, 503, 85 P.3d 220 [2004]).

A somewhat similar issue arose in *Zou v. Washburn South Apartments*, No. 126,652, 2024 WL 3219449 (Kan. App.) (unpublished opinion), *rev. denied* 319 Kan. 837 (2024). In that case, Zou argued that appellate courts had jurisdiction to review his claims because he did not dismiss his own claims voluntarily. The *Zou* court clarified that voluntary dismissals without prejudice are not subject to appeal because they are not final. 2024 WL 3219449, at *4 (citing *Bain*, 271 Kan. 578, Syl. ¶ 2). But it went on to hold that the distinction between voluntary and involuntary dismissals is irrelevant, since we have no jurisdiction to review any claims dismissed without prejudice. *Zou*, 2024 WL

11

3219449, at *4 (citing *Cohen v. Battaglia*, 41 Kan. App. 2d 386, 390-91, 202 P.3d 87 [2009], for its discussion of an involuntary dismissal without prejudice).

Appellate courts recognize a limited exception to the final order requirement when the dismissal of an action without prejudice would create an immediate and insuperable legal bar to the plaintiff pursuing their claims in a new action. A plaintiff typically would be permitted to appeal such a ruling under what's sometimes called the "death knell" doctrine. See *Brown v. Kansas City Archdiocese*, No. 98,213, 2008 WL 624703, at *3 (Kan. App. 2008) (unpublished opinion) (recognizing authority permitting appeal where an involuntary dismissal without prejudice would inflict "some real prejudice" on plaintiff in then pursing claim); 4 Am. Jur. 2d Appellate Review § 107 (outlining death knell doctrine). The exception has no application here—and typically would not with a civil action dismissed without prejudice—because Reinmuth could have filed a new petition notwithstanding any possible time bar, as provided in K.S.A. 60-518. We see no other legal barrier to Reinmuth filing a new petition. He simply chose not to do so and sought to appeal instead.

Claims dismissed without prejudice typically are not within the jurisdiction of the appellate courts; but the mere existence of such claims will not preclude appellate review of other claims within a suit that were properly resolved by the district court and the subject of a final order. For the preceding reasons, we affirm the portion of the district court's ruling that imposed sanctions against Reinmuth and dismiss that portion of Reinmuth's appeal which seeks to challenge the district court's dismissal of his claims without prejudice.

Affirmed in part and dismissed in part.